UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| In Re: | ) | 18-17111 |
|---|---|---|
| | ) | |
| MILTON C. BELL AND | ) | Chapter 13 |
| CYNTHIA Y. BELL, | ) | |
| | ) | Judge GOLDGAR |
| Debtor(s). | ) | |

## NOTICE OF MOTION

**The following parties have been served via electronic mail:**
US Trustee: USTPRegion11.ES.EFT@usdoj.gov
Marilyn O. Marshall, Chapter 13 Trustee: courtdocs@chi13.com

**The following party(s) have been served via regular US mail:**
See attached service list.

PLEASE TAKE NOTICE that on August 17, 2021, at 9:30 am, I will appear before the Honorable Judge Goldgar, or any judge sitting in that judge's place, and present the Motion to Incur Additional Debt, and Shorten Notice, a copy of which is attached.

**This motion will be presented and heard electronically using Zoom for Government.** No personal appearance in court is necessary or permitted. To appear and be heard on the motion, you must do the following:

**To appear by video,** use this link: https://www.zoomgov.com/. Then enter the meeting ID and password.

**To appear by telephone,** call Zoom for Government at 1-669-254-5252 or 1-646-828-7666. Then enter the meeting ID and password.

**Meeting ID and password.** The meeting ID for this hearing is 161-319-7225 and the password is 584922. The meeting ID can also be found on the judge's page on the court's web site.

**If you object to this motion** and want it called on the presentment date above, you must file a Notice of Objection no later than two (2) business days before that date. If a Notice of Objection is timely filed, the motion will be called on the presentment date. If no Notice of Objection is timely filed, the court may grant the motion in advance without a hearing.

/s/ Christine H. Clar
Christine H. Clar, A.R.D.C. #6202332
Attorney for the Debtor(s)

## PROOF OF SERVICE

A copy of this Notice of Motion and attachments were deposited at the United States Post Office, Wheeling, Illinois, 60090, with sufficient postage prepaid, by Christine H. Clar, or served electronically by the bankruptcy court, under oath and under all penalties of perjury.

DATE OF SERVICE: August 10, 2021          /s/ Christine H. Clar
                                                                Christine H. Clar, A.R.D.C. #6202332
                                                                Attorney for the Debtor(s)

*To the following persons or entities who have been served via U.S. Mail:*

Milton and Cynthia Bell
1625 N. Natchez Ave.
Chicago, IL 60707

Capital One Auto Finance
AIS Portfolio Services
4515 N. Santa Fe Ave., Dept. APS
Oklahoma City, OK 73118

IRS
P.O. Box 7346
Philadelphia, PA 19101-7346

Santander Consumer USA
P.O. Box 961245
Ft. Worth, TX 76161-1245

Quantum3 Group
GPCC I LLC
P.O. Box 788
Kirkland, WA 98083-0788

AmeriCash Loans
P.O. Box 184
Des Plaines, IL 60016

Waukegan Loan Management
P.O. Box 184
Des Plaines, IL 60016

Premier Bankcard
Jefferson Capital Systems
P.O. Box 7999
St. Cloud, MN 56302-9617

Capital One Bank
P.O. Box 71083
Charlotte, NC 28272-1083

LVNV Funding
MHC Receivables and FNBM, LLC
Resurgent Capital Services
P.O. Box 10587
Greenville, SC 29603-0587

Exeter Finance
AIS Portfolio Services
4515 N. Santa Fe Ave., Dept. APS
Oklahoma City, OK 73118

Illinois Dept. of Revenue
Bankruptcy Section
P.O. Box 19035
Springfield, IL 62794-9035

US Dept. of Education
P.O. Box 16448
St. Paul, MN 55116-0448

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | 18-17111 |
| | ) | |
| MILTON C. BELL AND | ) | Chapter 13 |
| CYNTHIA Y. BELL, | ) | |
| | ) | Judge GOLDGAR |
| Debtor(s). | ) | |

## MOTION TO ALLOW DEBTOR TO INCUR ADDITIONAL DEBT AND SHORTEN NOTICE

NOW COMES the Debtors, by and through his attorneys, DAVID M. SIEGEL & ASSOCIATES, LLC to present his Motion, and in support thereof states as follows:

1. Jurisdiction is proper and venue is fixed in this Court with respect to these parties.

2. On June 15, 2018 the Debtors filed a voluntary petition for relief pursuant to Chapter 13 under Title 11 USC, and the Chapter 13 plan was confirmed on September 4, 2018.

3. Marilyn O. Marshall was appointed Trustee in this case.

4. Debtor, Milton C. Bell has a post-filing worker's compensation case against his employer from June 20, 2019. His temporary total disability monthly benefit payments have been suspended, as he needs to schedule surgery. In the interim, Mr. Bell has requested a loan from Oasis Legal Finance for $5,000.00 at 36% interest, in order to pay his current bills, and catch up on his rent. He does not wish to jeopardize his housing.

5. Debtor's Workers Compensation attorney believes that debtor will collect on this case in excess of $5,000.00, with funds available to pay off this loan, pay the attorney's fees, and Debtor's post filing medical bills.

6. Debtor will pay off this loan as soon as the settlement funds are received.

WHEREFORE, the Debtors, MILTON C. BELL JR. AND CYNTHIA Y. BELL, pray that this Honorable Court grant the Motion to Allow Debtor to Incur Additional Credit.

Respectfully Submitted,

/s/Christine H. Clar
Christine H. Clar, ARDC #6202332
Attorney for Debtor(s)

DAVID M. SIEGEL & ASSOCIATES, LLC
790 Chaddick Drive
Wheeling, IL 60090
847/ 520-8100
davidsiegelbk@gmail.com

# EXHIBIT A

DocuSign Envelope ID: 3ED9FF61-8850-4C74-B9EC-A24263FE0C2D

FEDERAL TRUTH IN LENDING DISCLOSURE STATEMENT

| Loan Number: P-AE-IL-1283524 | Date Prepared: August 6, 2021 |
|---|---|
| Borrower<br>Milton Bell Jr.<br>6868 W. Medill Ave., Basement<br>Chicago, IL 60707<br>(773) 420-6331 (tel.) | Creditor<br>Oasis Legal Finance, LLC d/b/a Oasis Financial<br>9525 W. Bryn Mawr, Suite 900<br>Rosemont, IL 60018<br>(847) 513-7918 (tel.)<br>(847) 897-3108 (fax)<br>(Ill. Dept. of Fin. Inst. Lic. # CI-2637) |

| **ANNUAL PERCENTAGE RATE**<br>The cost of your credit as a yearly rate | **FINANCE CHARGE**<br>The dollar amount the credit will cost you | Amount Financed<br>The amount of credit provided to you or on your behalf | Total of Payments<br>The amount you will have paid after you have made all payments as scheduled |
|---|---|---|---|
| **36.00%** | **$2,085.63** | 5,000.00 | $7,085.63 |

You have the right to receive at this time an itemization of the Amount Financed.

__X__ Yes, I want an itemization.     ___ No, I do not want an itemization.

PAYMENTS: Your payment schedule will be:

| Number of Payments | Amount of Payment | When Payments Are Due |
|---|---|---|
| 23 | $295.24 | September 13, 2021 and each subsequent calendar month for a total of twenty-three (23) months |
| 1 | $295.11 | August 13, 2023 |

This obligation has a demand feature.

Security: None.
Prepayment: If you pay early, you will not have to pay a penalty.
Contract: See your contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties.

The undersigned acknowledges receiving a completed copy of this disclosure. The disclosure does not constitute a contract or a commitment to lend.

**Milton Bell Jr.'s Signature**                                **Date**

**COPY NOT NEGOTIABLE**

Case ID: P-AE-IL-1283524

DocuSign Envelope ID: 3ED9FF61-8850-4C74-B9EC-A24263FE0C2D

Loan Number: P-AE-IL-1283524

Oasis Financial
9525 W. Bryn Mawr, Suite 900
Rosemont, IL 60018
(847) 513-7918 (tel.)
(847) 897-3108 (fax)

# LOAN AGREEMENT AND PROMISSORY NOTE

This Loan Agreement and Promissory Note ("Agreement") is executed and delivered by Milton Bell Jr., 6868 W. Medill Ave., Basement, Chicago, IL 60707 ("Borrower", "You") on the Date of Loan Agreement and accepted by Oasis Legal Finance, LLC d/b/a Oasis Financial ("Lender", "We", "Us", or "Oasis"), (collectively, the "Parties"), on the date set forth on the signature page hereof (the "Effective Date").

**SECTION I.** **DEFINITIONS.** In addition to the terms identified above, the following terms have the meanings specified below:

"**Legal Claim**" means (a) the pending legal action(s) and/or lawsuit(s) to obtain money or property in which Borrower is engaged as a result of injuries and/or damages arising out of a personal injury or other claim on or about June 20, 2019 and all related proceedings arising from the underlying facts giving rise to the Legal Claim in which Borrower is engaged or has a right of recovery.

"**Applicable Privileges and Protections**" means the attorney-client privilege, the work product doctrine, and any other evidentiary privilege or protection that may be accorded documents or other information created in connection with the Legal Claim.

"**Amount of Loan**" means the amount disbursed to Borrower by Oasis.

"**Borrower's Attorney**" means Michael O. Youkhana and any substitute, new or additional attorney representing Milton Bell Jr. in the Legal Claim.

"**Effective Date**" means the date on which Oasis disburses the Loan pursuant to Section 2.1.

"**Interest Rate**" means the annual rate of 36% simple interest. [NOTE: The Interest Rate may be a different number than the Annual Percentage Rate disclosed above. The Interest Rate is a simple annual interest rate. The Annual Percentage Rate is the fixed rate that results from a calculation assuming that you make payments in accordance with the schedule in the Federal Truth in Lending Disclosure Statement, and is computed via a mathematical method known as the "actuarial method." Calculation of interest owing on the Loan is made based on the Interest Rate in this paragraph, not the Annual Percentage Rate. See Section II.]

"**Proceeds**" means all property or things of value payable to Borrower on account of the Legal Claim including without limitation, negotiable instruments, contract rights, annuities and securities whether obtained by judgment, settlement, arbitration award, or otherwise.

**SECTION II.** **THE LOAN.**

**2.1** **Loan.** Subject to the terms and conditions and relying upon the representations and warranties herein set forth, Oasis hereby agrees to make to Borrower on the Effective Date a loan in the Amount of Loan (the "Loan"). Once repaid, neither the Loan nor any portion thereof may be reborrowed. Oasis shall have no obligation to advance monies in excess of the Amount of Loan.

**2.2** **Repayment.** Borrower promises to pay all outstanding principal and all accrued and unpaid interest hereunder, together with all other amounts due, in accordance with this agreement (or at such earlier time as may be provided herein).

**2.3** **Interest.** The Loan shall bear interest on the unpaid amount financed thereof from the date the finance charge begins to accrue (August 13, 2021) until payment of the Loan in full. Interest shall accrue daily at a rate of $1/365^{th}$ of the Interest Rate. Notwithstanding anything herein to the contrary, in no event shall the interest charged hereunder exceed the maximum rate of interest permitted under applicable law. Any payment made which, if treated as interest would cause the interest charged to exceed the maximum rate permitted, shall instead be applied to outstanding principal, to the extent permitted by applicable law.

**2.4** **Document Preparation Fee.** Borrower shall pay to Lender a document preparation fee in the amount of $0.00.

**SECTION III. BORROWER'S REPRESENTATIONS AND WARRANTIES.** Borrower represents and warrants to Oasis as follows:

**3.1** **Title; Capacity; Power and Authorization.** Borrower is the claimant in the Legal Claim and has full right, title and interest in, to, and under the Legal Claim and the Proceeds and has the capacity and authority to enter into this Agreement.

**3.2** **Effect of Agreement; Binding and Enforceable.** The execution, delivery, and performance of this Agreement and the obligations contemplated hereby do not conflict with, or result in the breach or termination of any provision of, or constitute a default under, any other instrument or agreement to which Borrower is a party. This Agreement constitutes the legal, valid, and binding agreement of Borrower, enforceable in accordance with its terms.

**3.3** **No Prior Agreements; No Impairment.** Borrower has not sold, assigned, pledged, transferred, or encumbered any interest in the Legal Claim or the Proceeds. There are no asserted or, to the best of Borrower's knowledge, pending or threatened claims, liens, assignments, encumbrances, or judgments against Borrower or Borrower's assets that would materially impair the value, priority, or collectability of the Proceeds payable to Borrower in connection with the Legal Claim or the amounts owed to Oasis pursuant to this Agreement.

**3.4** **Information.** Borrower warrants that all information provided to Oasis is true, complete and correct and that Borrower has informed Oasis of all actions, facts and circumstances that materially affect or impair the Legal Claim.

**3.5** **Acknowledgement from Borrower's Attorney.** Borrower has executed and Oasis shall have received a copy of the Irrevocable Letter of Direction to Borrower's Attorney acknowledged by Borrower's Attorney prior to disbursement of the Amount of Loan.

**3.6** **Informed Transaction.** Borrower fully understands the terms and conditions of this Agreement, and Borrower has had an opportunity to read this Agreement and to consult with such advisors as Borrower deems appropriate, including attorneys and tax advisors, in connection with Borrower's entering into and performing this Agreement. Borrower has not relied on any statement, assurance, representation, or warranty, whether written or oral, of Oasis or any other person in connection with Borrower's entering into this Agreement.

**SECTION IV. BORROWER'S ACKNOWLEDGEMENTS.** Borrower acknowledges the following:

**4.1** **No Attorney-Client Relationship; No Rights with Respect to Legal Claim.** Oasis is not engaged in the practice of law, is not serving as Borrower's attorney, and does not assume or have any responsibility or obligation of any kind to Borrower or Borrower's Attorney in connection with the Legal Claim. Oasis and Borrower acknowledge and agree that Oasis shall have no right to control or otherwise make any decisions with respect to the conduct of the Legal Claim or any settlement or resolution thereof.

4.2     **No Effect on Relationship with Borrower's Attorney.** The transactions contemplated by this Agreement have no effect on the relationship between Borrower and Borrower's Attorney with respect to the Legal Claim including, without limitation, Borrower's obligation to make payments to Borrower's Attorney.

4.3     **No Direction as to Disposition of Loan.** Oasis has imposed no conditions on Borrower's use of the Loan.

SECTION V.     **OASIS AND BORROWER'S MUTUAL ACKNOWLEDGEMENS.**

5.1     **Decisions with Respect to the Legal Claim.** Oasis is not engaged in the practice of law, is not serving as Borrower's attorney, and does not assume or have any responsibility or obligation of any kind to Borrower or Borrower's Attorney in connection with the Legal Claim. Oasis shall have no right to control or otherwise make any decisions with respect to the conduct of the Legal Claim or any settlement or resolution thereof.

5.2     **Borrower's Right to Cancellation.** YOU MAY CANCEL THIS AGREEMENT WITHOUT PENALTY OR FURTHER OBLIGATION WITHIN FIVE (5) BUSINESS DAYS FROM THE DATE ON WHICH THE PARTIES ENTER INTO THIS AGREEMENT IF YOU EITHER:

   a. RETURN TO OASIS THE FULL LOAN AMOUNT BY DELIVERING OASIS'S UNCASHED CHECK TO OASIS'S OFFICE IN PERSON; OR

   b. SEND, BY INSURED, CERTIFIED, OR REGISTERED UNITED STATES MAIL, OASIS, AT THE ADDRESS SPECIFIED IN SECTION 7.2 OF THIS AGREEMENT, A NOTICE OF CANCELLATION AND INCLUDE IN THE MAILING A RETURN OF THE FULL LOAN AMOUNT IN THE FORM OF OASIS'S UNCASHED CHECK OR A REGISTERED OR CERTIFIED CHECK OR MONEY ORDER.

SECTION VI.     **COVENANTS.**

6.1     **No Further Lien, Assignment, or Agreement.** If Borrower sells, assigns, pledges, or transfers any interest in the Legal Claim or the Proceeds, Borrower agrees to satisfy the amount owed to Oasis. In the event an interest in the Legal Claim or the Proceeds is transferred by intestacy due to Borrower's death, Borrower's estate executors and personal representatives will be bound by this Agreement on behalf of Borrower's estate. Borrower shall not permit or grant any security interest, lien, or encumbrance without the prior written consent of Oasis.

6.2     **Prosecution of Legal Claim.** Borrower intends to use its reasonable best efforts to prosecute the Legal Claim and to bring the Legal Claim to good faith settlement or final judgment. Upon settlement or final judgment, Borrower shall use its reasonable best efforts to enforce collection of all sums due pursuant to any judgment or other award made with respect to the Legal Claim.

6.3     **Requests for Documents and Information.** Borrower shall provide and authorizes and directs Borrower's Attorney to provide Oasis with: (a) prompt written notice of any receipt by Borrower or Borrower's Attorney of Proceeds from the Legal Claim or documents evidencing any receipt of payments or promises to make payments on account of the Legal Claim; (b) copies of non-privileged materials including but not limited to pleadings, notices, orders, motions, briefs, other documents filed in the Legal Claim by any person or party; (c) copies of non-privileged documents relating to any other material development with respect to the Legal Claim or the Proceeds; and/or (d) verbal information regarding non-privileged matters.

6.4     **Facilitation of Payments.** If Borrower's Attorney or any other person possesses Proceeds that are payable to Oasis, Borrower agrees to execute and deliver such documents or other instruments and take such other actions as may be reasonably requested by Borrower's Attorney or such other person to direct or otherwise facilitate the payment of such Proceeds to Oasis.

6.5     **Substitution of Attorneys.** If Borrower obtains new or additional attorney in regards to the Legal Claim, Borrower agrees to provide Oasis with written notice of new or additional attorney and deliver a copy of the Irrevocable Letter of Direction to such new or additional attorney.

**6.6    Settlement Agreement.** Borrower shall use reasonable efforts not to enter into any settlement agreement or covenant that restricts Oasis's access to (or Borrower's obligation to provide to Oasis) information relating to the Proceeds or any settlement in connection therewith.

**6.7    Waiver of Defenses.** To the extent permitted by law, Borrower hereby waives any and all defenses with respect to the Loan and agrees not to avoid payment of any Proceeds that are payable to Oasis. Borrower has not, and shall not, directly or indirectly, whether by agreement or otherwise, delay, seek to prevent, impair, or frustrate the rights granted to Oasis under this Agreement or repayment of the Loan hereunder.

## SECTION VII. PAYMENT AND PRIORITY.

**7.1    Priority Payment to Lender; Cancellation of Debt.** The Loan shall not have any priority over attorneys' fees, costs, related medical liens, and statutory liens. If the Proceeds are insufficient to pay the Loan in full, Oasis shall receive all of the Proceeds, except as provided herein. Borrower understands and acknowledges that Borrower is responsible for any and all tax obligations that may result in the event that any forgiven debt arises under this Agreement. Borrower acknowledges that Oasis may be obligated to report forgiven debt to the Internal Revenue Service and other state authorities, as applicable (e.g., Form 1099-C). Borrower understands and acknowledges that Borrower is responsible for reporting any forgiven debt to the Internal Revenue Service and any other federal and state authorities. Further, borrower is responsible for all 1099-C filing requirements and required tax payments arising from the forgiven debt. Anything contained herein shall not be construed as tax or legal advice, and Borrower should consult a tax professional or attorney with questions.

**7.2    Timely Payment.** Loans shall be repayable at a rate of three percent (3%) per month in equal installments of $295.24, beginning on September 13, 2021, and each calendar month thereafter for a total of twenty-three (23) consecutive months, and a final installment amount of $295.11 due on August 13, 2023, which is the Maturity Date of this Loan. If any amounts due under this agreement remain outstanding on the Maturity Date, Borrower agrees to pay those amounts in full on the Maturity Date. A calendar month is that period from a given date in one month to the same numbered date in the following month, and if there is no same numbered date, to the last day of the following month. Payment is applied on the date of receipt by Oasis.

**7.3    Insufficient Funds Charge.** Borrower shall pay to Oasis, in addition to all other amounts due and owing under this Agreement, the amount of twenty-five dollars ($25.00), plus any actual expenses incurred by Oasis, in connection with any check or draft that is not honored because of insufficient or uncollected funds or because no such account exists.

**7.4    Manner of Payment.** All amounts payable to Oasis pursuant to this Agreement shall be paid to Oasis at the address for Oasis provided in this Agreement or as otherwise provided by notice to Borrower from Oasis. Payments shall be made by check, in immediately available funds, or in such other manner as agreed by the Parties.

**7.5    No Assignment.** The Parties agree and affirm that this contract does not represent an assignment of workers compensation benefits as defined under state law.

## SECTION VIII. EVENTS OF DEFAULT; REMEDIES; TERMINATION.

**8.1    Event of Default.** The breach by Borrower of any of Borrower's obligations under this Agreement shall constitute an "Event of Default" hereunder. In addition, it shall be deemed an Event of Default if Borrower files a voluntary petition under the United States Bankruptcy Code ("Bankruptcy Code") or enters into an assignment for the benefit of creditors or any other voluntary insolvency procedures, if any involuntary petition under the Bankruptcy Code is filed against Borrower, or if a receiver is appointed for Borrower or for any of Borrower's property.

**8.2    Remedies; Cure.** If any default, other than a default in payment, that would constitute an Event of Default is curable and if Borrower has been given a notice of a breach of the same provision of this Agreement within the preceding twelve (12) months, the default may be cured (and no Event of Default will have occurred) if Borrower, after receiving written notice from Oasis demanding cure of such default: (1) cures the default within thirty (30)

DocuSign Envelope ID: 3ED9FF61-8850-4C74-B9EC-A24263FE0C2D

days, or (2) if the cure requires more than thirty (30) days, immediately initiates steps that Oasis deems in Oasis's sole discretion to be sufficient to cure the default and thereafter cures the default as soon as reasonably practical.

**8.3** **Termination.** This Agreement shall terminate when Borrower's obligations under this Agreement have been performed in full.

## SECTION IX. MISCELLANEOUS.

**9.1** **Expenses.** Except as otherwise provided in Section 9.11, all legal and other costs and expenses incurred in connection with this Agreement and the transactions contemplated hereby shall be paid by the party incurring such expenses.

**9.2** **Survival of Representations.** All of the representations, warranties, covenants, and obligations contained in this Agreement shall survive the Effective Date.

**9.3** **Notices.** All notices pursuant to this Agreement shall be in writing and shall be deemed to have been made if delivered personally or sent by registered or certified mail (postage prepaid, return receipt requested) or delivered by reputable overnight courier to the Parties at the following addresses:

**If to Oasis:** Oasis Financial, 9525 W. Bryn Mawr Ave., Suite 900, Rosemont, Illinois, 60018, Attn: Controller.

**If to Borrower:** to the address set forth on the first page of this Agreement, or at such other addresses as either of the Parties hereto shall have specified in writing to the other. To the extent Oasis is unable to contact Borrower at any specified address, Oasis may give notice electronically or by other reasonable efforts or at such other addresses as either of the Parties hereto shall have specified in writing to the other.

**9.4** **Further Assurances.** To the extent permitted by law, Borrower shall, at any time, and from time to time after the Date of Loan Agreement, upon request of Oasis, do, execute, acknowledge, and deliver, or cause to be done, executed, acknowledged, and delivered, all such further acts, assignments, transfers, conveyances, powers of attorney, and assurances as may be reasonably required to carry out the terms of this Agreement and the transactions contemplated hereby.

**9.5** **Cumulative Rights.** Each and all of the various rights, powers, and remedies of the Parties set forth in this Agreement shall be considered as cumulative, with and in addition to any other rights, powers, or remedies of such party, and no one of them is or shall be exclusive of the others or is exclusive of any other rights, powers, and remedies allowed by law or in equity. The exercise, partial exercise, or non-exercise of any rights, powers, or remedies shall not constitute either the election thereof, nor the waiver of any other rights, powers, or remedies. All rights, powers, and remedies of the parties hereto shall survive the termination of this Agreement.

**9.6** **Waiver.** Any waiver by any party of its rights under this Agreement shall be in writing. The failure of either Party to enforce, at any time, any of the provisions of this Agreement shall in no way be considered a waiver of such provisions, rights, or subsequent breaches thereof.

**9.7** **Entire Agreement.** This Agreement (including the other documents and instruments referred to herein) constitutes the entire agreement between the Parties and supersedes all other prior agreements and understandings, both oral and written, between the Parties, with respect to the subject matter hereof. This Agreement may only be modified or supplemented by a written amendment executed by all of the Parties hereto.

**9.8** **Notice to Active Duty Servicemembers and Dependents.** The provisions of this Section 9.8 apply only to a "covered borrower" as defined by Federal law. Federal law provides important protections to active duty members of the Armed Forces and their dependents relating to extensions of consumer credit. In general, the cost of consumer credit to an active duty member of the Armed Forces and his or her dependent may not exceed the annual percentage rate set forth in the Military Lending Act. This rate must include, as applicable to the credit transaction or account: the costs associated with credit insurance premiums; fees for ancillary products sold in connection with the credit transaction; any application fee charged (other than certain application fees for specified credit transaction

or accounts); and any participation fee charged (other than certain participation fees for a credit card account). If you are an active duty member of the Armed Forces or a dependent, you may call us toll free at (888) 529-1253 for an oral disclosure of (i) a statement of the Military Annual Percentage Rate, and (ii) your payment obligations (payment schedule) applicable to this extension of credit as set forth in Section 1.1 of this Agreement. The provisions of Sections 9.1, 9.10 and 9.11 of this Agreement do not apply to a "covered borrower" as defined by Federal law. If any contract provision we have not identified herein is contrary to the rights and protections afforded to you by Federal law pursuant to 32 C.F.R. § 232.8, then the conflicting provisions or proscribed terms are inoperative, and shall have no force and effect. However, all remaining contract terms and provisions not proscribed or prohibited by 32 C.F.R. § 232.8 shall remain in full force and effect.

**9.9** **Counterparts; Electronic and Facsimile Signatures.** This Agreement may be executed in counterparts, each of which shall be deemed an original and all of which shall together constitute one and the same Agreement. This Agreement shall be deemed to have been executed in Cook County, Illinois.

**9.10** **Assignment; Use of Information.** To the extent permitted by law, Oasis's rights and obligations under this Agreement may be assigned in its sole discretion without consent of or notice to Borrower. Borrower's rights and obligations under this Agreement may not be assigned or transferred without the written consent of Oasis, except as required by applicable law. Borrower agrees that Oasis may share Borrower's information with potential assignees, provided that such information is reasonably necessary to allow a potential assignee to make an informed decision whether to take assignment from Oasis.

**9.11** **No Third Party Beneficiaries; Successors and Assigns.** This Agreement is solely for the benefit of Oasis and Borrower, and this Agreement shall be binding upon and inure to the benefit of the Parties' successors, heirs, estates, executors, personal representatives and permitted assigns.

**9.12** **Severability.** If any provision of this Agreement or the application of any such provision to any Party or circumstance shall be determined by any court of competent jurisdiction to be invalid or unenforceable to any extent: (a) the remainder of this Agreement shall not be affected and shall be enforced to the fullest extent permitted by law; (b) the Parties agree that any court of competent jurisdiction shall have the power to modify or replace such terms or provisions, to most closely express the intention of the replaced terms or provisions, and this Agreement shall be enforceable as so modified.

**9.13** **Legal Representation.** Borrower understands and acknowledges that (a) Oasis has recommended that Borrower engage an attorney in connection with the execution and delivery of this Agreement and (b) Borrower has been represented by or has had the opportunity to be represented by an attorney of Borrower's choosing in connection with the execution and delivery of this Agreement.

**9.14** **Construction.** The Parties intend that this Agreement be deemed to have been negotiated and prepared by all of the Parties and that no Party shall be entitled to the benefit of any favorable interpretation or construction of any term or provision hereof under any rule or law with respect to the construction of this Agreement.

**9.15** **Other Miscellaneous.** Once the case has been resolved, Borrower agrees not to instruct his/her attorney to not pay Oasis the principal and accrued interest owed.

**9.16** **Applicable Law.** This Agreement is governed by Federal law and the laws of state of your residence as reflected above. The agreement to arbitrate contained in this Agreement is governed by the FAA and not by any state law governing arbitration.

**9.17** **WAIVER OF JURY TRIAL, CONSOLIDATION AND CLASS ACTION; COSTS. PLEASE READ THIS PROVISION CAREFULLY AS IT AFFECTS HOW DISPUTES, IF ANY, BETWEEN YOU AND US WILL BE RESOLVED.**

**Applicability and Right to Opt-Out:** This provision applies to You if You enter into this Funding Agreement, unless You have opted-out by following the steps set forth herein. You may opt-out of the agreement to arbitrate disputes but only if We receive from You a written notice of opt-out within 30 days after You have accepted the Funding Agreement. You must send the notice of opt-out to: Attn: Legal Department, 9525 W. Bryn

DocuSign Envelope ID: 3ED9FF61-8850-4C74-B9EC-A24263FE0C2D

Mawr Ave., Suite 900, Rosemont, Illinois, 60018. Your opt-out notice must include your name, address, phone number, and personal signature. Opting-out of arbitration will not affect your other rights or responsibilities under this Funding Agreement. If You opt-out of arbitration, neither You nor We will be subject to this Agreement to Arbitrate.

**Agreement to Arbitrate.** In the event of any claim, counterclaim, cross-claim, complaint, cross-complaint, controversy, or dispute ("**Dispute**") between You and Us arising under, out of, or in any way related to this Funding Agreement or the interactions between You and Us, either may choose to require the other to resolve the Dispute by binding arbitration on an individual basis instead of in court, *provided, however*, that the obligation to arbitrate shall not be binding upon any party with respect to (i) any suit to compel arbitration, stay proceeding pending arbitration or to confirm, modify, vacate or enter judgment on the award entered by the arbitrator, (ii) requests for preliminary injunctions, temporary restraining orders, specific performance or other procedures in a court of competent jurisdiction to obtain interim relief when deemed necessary by such court to preserve the status quo or prevent irreparable injury pending resolution by arbitration of the actual Dispute, (iii) any claim related to actual or threatened infringement, misappropriation or violation of a party's copyrights, trademarks, trade secrets, patents or other intellectual property rights, or (iv) actions to collect payments not subject to a bona fide Dispute. Dispute includes claims related to any prior Funding Agreements or applications therefor. It includes any and all subsequent Funding Agreements between You or Us. It includes claims related to collections, privacy, and customer information. It includes claims related to the validity in general of this Funding Agreement. Without limiting the generality of the foregoing, the term Dispute shall include any claim, controversy or dispute without regard to when it arose; whether it is based in contract, tort, statute, regulation, common law, or equity; or whether the remedy sought is legal or equitable, including claims for compensatory, monetary and/or punitive damages, restitution and/or disgorgement, or injunctions. Dispute also includes any claim, defense or dispute concerning the making, cancellation, existence, validity, enforceability, revocation or scope of this Funding Agreement. Dispute shall also include any claim or controversy or dispute with respect to validity, rescission, revocation, enforceability, coverage or scope of this agreement to arbitrate. Dispute also includes any disagreement or controversy regarding whether You effectively opt-out of this agreement to arbitrate. The arbitrator shall decide all Disputes. Dispute DOES NOT include any claim regarding the making of this agreement to arbitrate. You agree that this agreement to arbitrate may be enforced by Us or our affiliates, subsidiaries, or parents, and each of their officers, directors, employees, and agents and any third-party co-defendant of a claim subject to this agreement to arbitrate.

**No Jury Trial, No Consolidation, No Class Action.** If You or We require arbitration, neither party shall have the right to litigate a Dispute in court or to have a jury trial with respect to a Dispute. Instead, any Dispute will be determined by an arbitrator in accordance with the terms of this agreement to arbitrate. Also, discovery and appeal rights are limited in arbitration. Further, in arbitration, only your individual demands for damages, injunctive relief, restitution, disgorgement, or other remedies or relief available under applicable federal, state, or local law can be resolved in arbitration and neither You, nor We, may join or consolidate disputes in arbitration by or against other consumers or litigants, or litigate in court (whether individually or as part of class action), or arbitrate any disputes as a representative or member of a class or in a representative or private attorney general capacity. However, this arbitration agreement shall not be construed to prevent You from seeking in the arbitration the remedy of public injunctive relief.

**Governing Law.** This agreement to arbitrate is made pursuant to a transaction involving interstate commerce. The Federal Arbitration Act (9 U.S.C. §§1-16) ("FAA") shall govern this arbitration agreement including without limitation, all issues relating to the making, cancellation, rescission, validity, revocation, enforceability, scope, or revocation of this agreement to arbitrate, and any issue of whether a particular claim or dispute is arbitrable or whether You effectively opted-out of this agreement to arbitrate. The FAA shall also govern any issue related to the confirmation of the arbitral award.

**Administration of the Arbitration.** The arbitration shall be administered by JAMS pursuant to its Streamlined Arbitration Rules (the "Rules"), as modified by this arbitration provision. A copy of the JAMS Streamlined Arbitration Rules can be obtained from JAMS at https://www.jamsadr.com/rules-streamlined-arbitration or (800) 352-5267. The arbitrator shall be selected from the JAMS panel of neutrals then active on the roster maintained by the JAMS office located in or nearest to your address as set forth in this contract, and the arbitrator shall be a retired federal judge, a retired state appellate judge, or a retired state trial judge in that order of

DocuSign Envelope ID: 3ED9FF61-8850-4C74-B9EC-A24263FE0C2D

preference. For disputes where the amount in controversy exceeds $100,000 or involves a claim for public injunctive relief, the judge must have more than ten years' experience as a judge. In the event that the parties do not agree on the identity of the arbitrator, JAMS shall appoint an arbitrator in accordance with the identified rules and the arbitrator qualifications set forth herein. If JAMS is completely unavailable, and if You and We cannot agree on a substitute, then either You or We may request that a court appoint a substitute administrator.

**Fees and Costs of Arbitration.** Each party shall bear the expense of its own counsel, experts, witnesses and preparation and presentation of proofs. If You commence the arbitration, You will only be required to pay the first $250.00 of any filing fee charged by JAMS. All other costs of the arbitration (including the arbitrator's fees) will be paid by Us. If You lose the arbitration, and applicable law allows Us to recover our attorney's fees, the arbitrator will decide whether You must reimburse Us for such fees. If You win the arbitration, You are entitled to be reimbursed your reasonable attorneys' fees and costs (if actually paid by You).

**Arbitration Decisions and Appeals:** A single arbitrator will be appointed. The arbitrator must: (1) follow the FAA including (without limitation) with respect to the issues governed by the FAA (identified above); (2) subject to the FAA, apply federal law including the FAA to any other issues related to the Dispute that would be governed by federal law in court; (3) subject to the FAA, apply the law of the state of your residence set forth in this contract to any other issues related to the Dispute that would be governed by state law in court; (4) apply the JAMS Rules identified in this agreement to arbitrate to the extent not inconsistent with the FAA, other applicable law, or the terms of this arbitration agreement; (5) apply applicable statutes of limitations; (6) honor valid assertions of privilege under applicable law; (7) issue a written decision stating the reasons for the award; and (8) the arbitrator is authorized to grant any relief authorized by law, this Agreement, and the JAMS Rules. The arbitrator is authorized to award all individual remedies or relief permitted by applicable federal, state, or local law that the parties could have received in court.

The arbitrator's decision will be final and, except as provided herein, for appeals, any court of competent jurisdiction may enter judgment upon the arbitral award issued by a single arbitrator pursuant to the FAA.

**Survival of this Provision.** This agreement to arbitrate provision shall survive the voluntary payment of the Oasis Ownership Amount or any part thereof.

**Severability Provision Applicable to this Agreement to Arbitrate.** If any portion of this arbitration agreement cannot be enforced, the unenforceable portion will be severed and the rest of this arbitration agreement will continue to apply, except that if a court or the arbitrator decides that a Dispute can be heard on a class or representative basis, and that decision is not reversed on appeal, then the agreement to arbitrate shall be void.

[THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK]

DocuSign Envelope ID: 3ED9FF61-8850-4C74-B9EC-A24263FE0C2D

By placing your initials below, You represent and acknowledge that You have read and agree to the terms of the agreement to arbitrate:

[ ]

**Milton Bell Jr.'s Initials**

**9.18** **Communications with Borrower.** Borrower hereby expressly consents to be contacted by Oasis, its agents, representatives, or affiliates, for all purposes arising from or relating to this Loan and other Oasis loans under Borrower's account at the telephone number(s), or physical or electronic address Borrower provided. Borrower certifies, warrants and represents that the telephone numbers that they have provided to Oasis are their contact numbers for which they are the subscriber ("Telephone Number(s)"). Borrower represents that they are permitted to receive calls at each of the Telephone Number(s) and agrees to promptly alert Oasis whenever they stop using a particular Telephone Number(s). Borrower expressly agrees that Oasis may contact them in any way, including SMS messages (including text messages), and call them at the Telephone Number(s), using prerecorded messages or artificial voice, as well as live operator calls delivered using automatic telephone dialing system. Automated and prerecorded or artificial voice messages may be played when the telephone is answered, whether by Borrower or someone else. In the event that an agent or representative calls, he or she may also leave a message on Borrower's answering machine or voice mail.

**9.19** **Update Preferences for Marketing Communications.** If you would like to update your marketing preferences regarding SMS and phone calls, you may do so below. By checking the Yes box below, you consent to receive, at the Telephone Number(s), autodialed and manually dialed marketing phone calls and text messages from Oasis about products and services offered by Oasis Financial and its affiliated companies and partners that may be of interest to you. By checking the No box below, you will be opted out of any prior marketing preferences you have made. Message and data rates may apply. Consent to receive marketing communications is not a condition of receiving loans or services from Oasis. You may opt out at any time by calling (866) 871-7741 or sending an email with the Telephone Number to optout@oasisfinancial.com.

☐ Yes, send me offers from Oasis Financial by phone or SMS/text message to my Telephone Number.

☐ No, do not send me offers from Oasis Financial by phone or SMS/text message to my Telephone Number.

THIS LOAN AGREEMENT SHALL NOT BECOME EFFECTIVE UNTIL EXECUTED BY LENDER.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed on the date first written above (as to Borrower) and on the Effective Date (as to Oasis), and to be effective as of the Effective Date.

**BORROWER:**                                                                 **OASIS FINANCIAL:**

[ ]                                                        _____          _____          _____
Milton Bell Jr.'s Signature                  Date                       By: Its Representative,                    Effective Date
                                                                                        for Oasis Financial

Consumer Notice: This instrument is non-negotiable in form but may be pledged as collateral security. If so pledged, any payment made to the payee, either of principal or of interest, upon the debt evidenced by this obligation, shall be considered and construed as a payment on this instrument, the same as though it were still in possession and under the control of the payee named herein: and the pledgee holding this instrument as collateral security hereby makes said payee its agent to accept and receive payments hereon, either of principle or of interest.